(Summit County Court of Common Pleas.)

CREECH et al. v. P., A. & W. RAILROAD COMPANY.

Delinquent taxes and penalty are payable out of the funds arising from the judicial sale of the railroad and other property of an insolvent railroad corporation, although the same became due and payable before the court acquired jurisdiction of the property sold, as against the rights of a mortgagee, under mortgage antedating the levy of taxes.

(April Term, 1895.)

VORIS, J.

The railroad of the P. A. & W. R. R. Co. and all its proprietary interest, went into the hands of a receiver, by order of this court entered the 29th day of July, 1893, since which time the same have been subject to judicial administration.

The Central Trust Company, as trustee of the holders of the bonded indebtedness of the railroad company, filed a cross-petition in this action, the object of which was to foreclose their trust mortgage, to enforce payment of unpaid matured interest secured, among other things, by the mortgage. Other liabilities, for construction, material, repairs, labor, operating expenses, taxes and the like to a large amount, partly secured by liens on the road, existed against the railroad company and remain unpaid. But no further statement as to them need be made to define the rights of the parties to the present contention. The hopeless insolvency of the company is conceded. Taxes, to a large amount, assessed by the auditors of the several counties through which the railroad is located, part of which accrued before the appointment of the receiver, have accumulated, become delinquent, and still remain unpaid, to collect which the treasurers of these counties filed cross-petitions in this action, and who now seek to have the funds arising form the sale of the railroad property applied to the payment of these taxes, and the statutory penalty allowed on delinquent taxes, and expenses of collecting the same.

This application of the funds is resisted by the trust company, upon the grounds that all the property taxed is personal property; that no lien attaches to personal property for the taxes levied on it, which property can only be reached by seizure, pursuant to the statute, which, in fact, was not done or attempted to by the treasurers, and therefore gives them no preference over the mortgage lien of the bondholders.

Is this contention tenable? It should be kept in mind, that since the appointment of the receiver, all the taxed property has been in the hands of the law—this court—and that no laches can be imputed to the treasurers for not collecting the taxes and penalty by seizure since that date, and that no new rights have intervened in behalf of the trustees since the taxes became due. It appears to the court that these treasurers have done just what they ought to have done by coming into this court and asking to have these taxes ordered to be paid out of the funds arising form the sale of the taxed property. That the trustees have been prejudiced by the delay in collecting these taxes by resort to the jurisdiction of this court by the several treasurers is not apparent to the court.

The power of taxation is indispensable to the existence of any government. It is so fundamental that no government worthy of the name ever existed without it. Our state constitution makes it mandatory upon the law-making power, that "laws shall be passed taxing by a uniform rule all moneys, credits, investments in bonds, stocks, joint stock companies

or otherwise; and also all real and personal property, according to its true value in money;" Const. art. XII, sec. 2; and art. XIII, sec. 4, specially subjects "the property of corporations to taxation the same as other property is taxed;" and by sec. 1, art. XII, the taxation of persons by the poll is declared to be grievous and oppressive and is prohibited. Thus, by constitutional provision, property, and not the person of the owner, is taxed. But the trust company adopts the opposite theory, that the person must pay the tax, and he failing, the tax must fail as against the property—that under the circumstances other rights have intervened which are superior to those of the public, and that the taxes should not be satisfied out of this fund.

The power to levy and collect the tax overshadows all such property within the state—no matter by whom or how owned. It is the property, not the owner that is taxed. The incident of ownership may be wholly immaterial, so the property itself be within the jurisdictional power of the state. It matters not whether the property be in the hands of its real owner, or in that of his agent, trustee, or in the hands of a tort feasor; or whether the owner be under legal disability or not—infancy, coverture or mental incapacity, even death itself, can interpose no bar to the exercise of this prerogagtive of the state; and failure to pay the taxes in any such cases, leaves the property taxed liable. Nor is the power to impose and collect the statutory penalty by the means provided by law, in any sort impeded by reason of such disability. No one interested in the preservation and enjoyment of the property taxed, or to be taxed, who does not see to it that the impost is paid, can complain that the legal consequences of dereliction follow the property. The rights of lien holders, whatever they be, are not exempt from the paramount rights of the state. Nor does it make any difference whether the property subject to taxation is real or personal. Both alike are subject to the power and rights of the state. Both kinds of property are taxed by a uniform rule. As to railroad property, the method of appraising and assessing is the same as to both, and both are included in the same appraisal; so that no matter what legal distinctions may be imagined to exist, when real or personal property is considered, these distinctions fade away in the judicial determination of this case.

The real question is, has the property been properly assessed, and has the tax been paid? The railroad property in contention, and the fund arising from the sale ordered by the court, is sui generis, and the rights of the trustees of the bondholders, are peculiar to themselves, because of the peculiar character of the property and rights embraced in the trust deed, and are not determinable by the rules applicable to lienholders between themselves, where the rights of the state do not intervene.

The priority or superiority of equities between debtor and creditor, or between different creditors or lienholders, furnish no criterion by which the rights of the sovereign power of the state may be adjudged. If so, the private arrangements of the parties might nullify the tax laws, and defy this indispensable power of the state.

The peculiarities of railroad property and rights of mortgagees are so well known to the profession, that I need not state them here, other than that the corporation pledged its property, personal as well as real, and its income, franchises—in fact everything tangible and intangible, constituting the entity known as the railroad, and its operation as an entirety—those existing at date of mortgage as well as those afterwards to be created, so that if the mortgage lien of the trustees were to be recognized as superior to the rights of the state to this fund, by the laws of the state, it

would in effect be the abdication of the state, so far as its prerogative of taxation is concerned, to the New York trustees, and their cestui que trustents;—an inconsistency and negation of sovereignty on part of the state not to be presumed, or encouraged by the courts.

The property being taxed, and within the territorial and judicial jurisdiction of the state, and it being established that the taxes are not paid, on what recognized principle of our jurisprudence, or equity, can the trustees claim that the failure of the railroad company, the bondholders, or the other parties in interest to pay the taxes ousts the state of its right to collect these taxes out of the property upon which it was levied? No satisfactory reason has been exhibited to us by counsel. That the state may seize the property for the payment of the taxes due thereon, when unpaid, if within its jurisdiction, is too plain for argument, a fortiori would it be entitled to apply moneys it already had in its hands for administration for the payment of liabilities against the property from which the fund was derived.

We are unable to see any substantial reason why we should not order these taxes paid out of the funds arising out of the sale of the railroad property of the Pittsburg, Akron & Western Railroad Company, as against the trustees of the bondholders. If the taxes have become delinquent, it is because they have not caused their mortgagor to pay them, or seen to it themselves.

My personal observation in this court for over forty-five years, and of intimate acquaintance with its proceedings, does not bring to mind a case in which it has ever been held that the payment of taxes properly assessed, might be postponed to the equities existing between debtors and creditors, whether the parties were natural or artificial persons; nor do I remember of such rule having been upheld anywhere else.

The recognized doctrines of political government are against such conclusion, and these must be upheld by this court as part of our jurisprudence.

To this court, the rights of the parties are clearly defined by law. This court, as part of the government of the state, ought to assert the sovereignty of the state, and the rights of other taxpayers, so that their property should not bear more than an equal share of the public burdens, and that this railroad property should bear its share.

We know of no law that will exempt this property from the penalty imposed by the different auditors of the counties whose treasurers have filed cross-petitions in this action.

We adjudge a decretal order that the taxes set out in the several cross-petitions, the amended and supplemental ones as well, of the respective county treasurers, be paid out of the funds arising from the sale of the railroad, with statutory penalty, and costs, with interest from the first day of term, to be computed on amount of delinquent taxes actually due; that is, not to include penalty and treasurers' five per cent. for collection, in the computation for interest.

Oviatt, Allen & Cobbs, plaintiffs' attorneys.

Atterholt, Sadler & Marvin, defendant's attorneys.